IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 17, 2019

**DEMARCUS LASHAWN BLACKMAN v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Marshall County**
**No. 2018-CR-75    Franklin L. Russell, Judge**

———————————————

**No. M2018-02230-CCA-R3-PC**

———————————————

The Petitioner, Demarcus Lashawn Blackmun, was convicted by a Marshall County jury of the sale and delivery of .5 grams or more of cocaine, which were merged by the trial court, and received a sentence twelve years' incarceration. State v. Demarcus Lashawn Blackman, No. M2016-01098-CCA-R3-CD, 2017 WL 3084852, at *1 (Tenn. Crim. App. July 20, 2017). He later filed a petition seeking post-conviction relief, alleging that trial counsel were ineffective in failing to obtain the criminal history of the confidential informant (CI) and in failing to adequately investigate the crime scene.[1] Following an evidentiary hearing, the post-conviction court denied relief, and the Petitioner now appeals. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and D. KELLY THOMAS, JR., J., joined.

Joseph C, Johnson, Fayetteville, Tennessee, for the Petitioner, Demarcus Lashawn Blackman.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Senior Assistant Attorney General; Robert J. Carter, District Attorney General; and Drew Wright and William Bottoms, Assistant District Attorneys General, for the Appellee, State of Tennessee.

**OPINION**

---

[1] At the evidentiary hearing, the Petitioner also argued that lead counsel and co-counsel were ineffective in failing to "insist that the entirety of the audio recording of the sale be played for the jury" and in failing to call a certain witness at trial. Neither of these issues are included as grounds for relief in this appeal.

The facts giving rise to the Petitioner's convictions resulted from a single, controlled drug transaction, which was arranged and monitored by the Drug Task Force (DTF) in Lewisburg County, Tennessee. A CI working for the DTF testified that he knew the Petitioner before the drug transaction and that he called the Petitioner to arrange to buy drugs from him on the day of the offense. Three phone calls of conversations between the CI and the Petitioner were admitted into evidence at trial. The CI testified that he purchased a gram of powder cocaine from the Petitioner in exchange for $100 of pre-marked money given to him by the DTF. Jose Rameriz, a sheriff's deputy assigned to the DTF, testified and confirmed that he observed the CI "touch hands with the individual involved with the transaction." In addition, the DTF assistant director testified that he supervised the instant controlled drug transaction and that he observed a "hand-to-hand exchange between [the CI] and the individual, later identified as the [Petitioner]." Demarcus Lashawn Blackman, 2017 WL 3084852, at *1-2.

Following his conviction and sentence, the Petitioner appealed. As relevant here, the Petitioner argued on direct appeal that the evidence was insufficient to sustain his drug convictions because the DTF agents did not see him "hand [the CI] the drugs;" and did not "thoroughly search [the CI]" prior to the drug transaction. In addition, the Petitioner argued that the evidence was insufficient because it was based on the testimony of the CI, a thief and convicted felon. This court affirmed, holding that the evidence was more than sufficient to sustain the Petitioner's drug convictions. Id.

On April 1, 2018, the Petitioner, acting pro se, filed a petition seeking post-conviction relief, alleging ineffective assistance of counsel based on trial counsels' failure to "investigate the informant's criminal history," which prevented adequate impeachment of the informant; and trial counsels' failure to adequately investigate the crime scene location, asserting that the agent's line of sight was obscured by a dumpster and a high wall. The post-conviction court subsequently appointed counsel, an amended petition was filed on August 7, 2018, and the same issues from the pro se petition were incorporated therein.

On October 19, 2018, the post-conviction court conducted an evidentiary hearing. The Petitioner testified and introduced eight photographs of the Summit Apartments complex, the location where he met the CI on the day of the offense. The complex was shaped like an "L," with two separate doors--a brown door and a clear glass door. The brown door led into a stairwell, while the glass door led into a hallway. The Petitioner testified that trial counsel did not visit or take any photographs of the area. He also alleged that trial counsel did not obtain the CI's prior criminal history, and that he failed to properly cross-examine the CI. On cross-examination, the Petitioner conceded that

trial counsel visited him several times prior to his trial, and that they attempted to impeach the CI with his prior felony convictions.

Lead counsel testified that the Petitioner was "a very hands-on client" and that he and his co-counsel had spent as much time on this case as some murder cases. Lead counsel obtained the criminal history of the CI; however, the CI did not have any drug-related prior convictions. Lead counsel attempted to emphasize the CI's prior conviction for attempted aggravated robbery, but he was stopped from venturing into the specific facts by the trial judge. On cross-examination, lead counsel testified that he did not have personal knowledge of the Summit Apartments, but that his co-counsel did. Lead counsel agreed that the CI was a poor witness for the State. However, lead counsel opined that the CI's credibility was bolstered by the two law enforcement officers who also witnessed the drug transaction.

Co-counsel testified consistently with the lead counsel. He explained that they met numerous times with the Petitioner and talked through defense strategy at length. Co-counsel recalled that lead counsel extensively questioned the CI as an unreliable witness, even though he did not have any drug-related convictions. He also testified that he had had several clients at the Summit Apartments and was familiar with the area. In preparation for trial, co-counsel did not revisit the apartments, but he did look at the geography on a satellite map to reacquaint himself with area. On cross-examination, he admitted that "a brown door and a clear door are very different doors."

Agent Ramirez, who previously testified at trial that he observed the CI "touch hands with the individual involved with the transaction[,]" was called to testify by the Petitioner. Agent Ramirez said that he had parked in the parking lot behind Summit Apartments and had a clear line of sight to the drug transaction. He was not able to see the brown door and was not aware that it existed. He also testified that the dumpster in the photographs admitted by the Petitioner had been moved or was in a different location at the time of the offense.

The Petitioner recalled himself as a witness, and he began to challenge the sufficiency of the evidence. The post-conviction court reminded him that this issue had already been litigated and that he should focus on his ineffective assistance claim. He then expressed a general dissatisfaction with his representation and felt that he would not be in prison had his attorneys done more, but he was unable to articulate what he believed they should have done. Post-conviction counsel did not ask him any questions on recall and allowed him to express his grievances in a narrative response. The Petitioner had intended to call an additional witness, but they were not transported to the hearing despite a transport order by the post-conviction court. The post-conviction court nevertheless found that the witness would not be able to give relevant or admissible testimony and

refused to allow an extension for his appearance. Similarly, the post-conviction court refused to grant an extension to call the CI as a witness since the Petitioner had not requested that he be transported, and it was unlikely he would have any new testimony.

By memorandum order issued on November 19, 2019, the post-conviction court denied relief, reasoning in pertinent part, that the State and defense counsel put forth the informant's criminal history at trial, that the Petitioner failed to provide any evidence of additional criminal convictions of the CI, and that there was no evidence that a "personal visit to the parking lot" of Summit Apartments, "the epicenter of crime" in Lewisburg County, would have yielded more information for the defense to have engaged in a more thorough cross-examination of the DTF agents. It is from this order that the Petitioner timely appeals.

## ANALYSIS

The Petitioner contends that the post-conviction court erred in denying relief. He specifically argues that trial counsel were ineffective in failing to properly investigate the criminal background of the CI and in failing to investigate the apartment complex where the drug sale occurred. In response, the State contends that the Petitioner failed to establish deficient performance or prejudice; thus, the post-conviction court properly denied relief.

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction or sentence is void or voidable because of an abridgement of a constitutional right. Tenn. Code Ann. §40-30-103. The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal citations and quotation marks omitted); see Felts v. State, 354 S.W.3d 266, 276 (Tenn. 2011); Frazier v. State, 303 S.W.3d 674, 679 (Tenn. 2010). A post-conviction petitioner has the burden of proving the factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); Tenn. Sup. Ct. R. 28, § 8(D)(1); Dellinger v. State, 279 S.W.3d 282, 293-94

- 4 -

(Tenn. 2009). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Lane v. State, 316 S.W.3d 555, 562 (Tenn. 2010); Grindstaff v. State, 297 S.W.3d 208, 216 (Tenn. 2009); Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish by clear and convincing evidence that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Vaughn, 202 S.W.3d at 116 (citing Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975); Strickland v. Washington, 466 U.S. 668, 687 (1984)). A petitioner successfully demonstrates deficient performance when the petitioner establishes that his attorney's conduct fell "below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694). "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." Id.

Applying the above law to this case, we conclude that the Petitioner is not entitled to relief. The Petitioner argues that had trial counsel obtained and investigated the criminal history of the CI, they would have been able to more effectively engage in cross-examination and impeach the credibility of the CI. However, at the post-conviction hearing, lead counsel and co-counsel testified that they did, in fact, obtain the criminal history of the CI. Both the State and trial counsel questioned the CI extensively about his prior felony conviction and his theft from the DTF. Lead counsel cross-examined the CI about his criminal history such that the trial court ordered lead counsel to move on to a different line of questioning. Both trial counsel and the post-conviction court opined that the CI was a poor witness who consistently contradicted himself. The post-conviction court determined that the CI was unable to recall basic facts about the transaction, had a history of stealing from the police, had a felony conviction, was well versed in drug culture and language, and had a financial interest in securing more arrests and convictions for the DTF. Given these flaws in the credibility of the CI, the post-conviction court determined that any further impeachment would have been duplicative and would not have addressed the fact that multiple law enforcement officers corroborated the CI's testimony. Moreover, the Petitioner failed to present any evidence establishing that the CI had any additional criminal history. Based on this record, the post-conviction court determined, and we agree, that the Petitioner failed to establish deficient performance or prejudice to his case. He is not entitled to relief on this issue.

The Petitioner also argues that had trial counsel visited the Summit Apartments, they would have been able to more adequately cross-examine the agents who witnessed the drug transaction about their line of sight. At the post-conviction hearing, co-counsel testified that he was familiar with the Summit Apartments and that he refreshed his memory of the site by looking at an aerial map prior to trial. Based on his prior knowledge of this location, lead counsel and co-counsel were able to thoroughly cross-examine the CI as well as the agents who witnessed the drug transaction regarding their line of sight. Although the Petitioner attempted to discredit Agent Ramirez with photographs of the location, Agent Ramirez pointed out that the dumpster in the Petitioner's photographs, which would have obstructed his line of sight, was not in the same position as it was during the drug transaction. The post-conviction court determined that a personal visit to the parking lot of the Summit Apartments would not have yielded additional evidence. The record does not preponderate against the determination of the post-conviction court. Accordingly, the Petitioner has failed to establish deficient performance or prejudice. He is not entitled to relief.

## CONCLUSION

For the above reasons, we affirm the judgment of the post-conviction court.

_____
CAMILLE R. MCMULLEN, JUDGE